# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ALICIA NAILIA ROYAL, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Cause No. 1:18-cv-122-HAB<br>) |
| SCAN, INC., PAIGE WALKER and<br>CHRIS SPURLING, | )<br>)<br>) |
| Defendants. | ) |

## ORDER AND OPINION

This matter comes before the Court on Defendants' Motion to Dismiss (ECF No. 13). Defendants ask this Court to dismiss Plaintiff's pro se Civil Complaint (ECF No. 1) under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction to hear the case. For the reasons set forth below, Defendants' Motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  PLEADINGS

Plaintiff's pro se complaint was filed on May 7, 2018. While not a model of clarity, the complaint alleges generally that Paige Walker ("Walker") and Chris Spurling ("Spurling"), employees of SCAN, Inc., wrongfully denied Plaintiff's supervised visitation with her minor daughter. Plaintiff requests damages in the amount of $700,000, plus court costs.

Defendants filed their Motion to Dismiss and supporting Memorandum of Law on October 8, 2018. In support of their argument for dismissal under F.R.C.P. 12(b)(1), Defendants asserted that Plaintiff's Complaint fails to invoke this Court's jurisdiction under either a federal question or diversity basis, that Plaintiff's Complaint fails to allege a case or controversy, and that this matter falls within the "domestic relations" exception to federal diversity jurisdiction. Although

Plaintiff submitted two filings titled "Response," no substantive legal response to Defendants' arguments were made. Defendants filed no reply to either "Response."

**B.     SCAN**

Neither the Plaintiff nor the Defendants provide the Court with any information about SCAN, Inc., the sole entity defendant in this action. From what the Court can glean from Plaintiff's complaint, SCAN is responsible for coordinating and monitoring Plaintiff's court-ordered, supervised visits with her minor daughter. SCAN also appears to be responsible for coordinating and/or facilitating court-ordered therapy for both Plaintiff and her daughter.

Plaintiff's allegations are consistent with the information that SCAN publishes on its public website.[1] SCAN holds itself out as a 501(c)(3) organization that is "non-sectarian and partially funded by the Indiana Department of Child Services (DCS)." The primary purpose of SCAN is found in the meaning behind its acronymous name: SCAN stands for "Stop Child Abuse and Neglect." Among the "Programs and Services" publicized on the website is "Visitation Facilitation." In describing this service, SCAN states:

> **What:** Supervised visitation between a child(ren) who have been removed from their home because of abuse and/or neglect and their parents. This services goal is to keep the children safe and to teach the parents skills in coping with their children. It occurs at SCAN's offices, at client's homes or in public.
>
> **Who:** Families referred by The Indiana Department of Child Services.[2]

Another service publicized by SCAN is "Home-Based Therapy," which is described as:

> **What:** Structured, goal-oriented, time-limited therapy in a family's natural environment. Provides assistance while recovering from physical abuse, sexual abuse, emotional abuse and neglect. Licensed clinicians provide this service.
>
> **Who:** Families referred by The Indiana Department of Child Services.[3]

---

[1] https://www.scanfw.org/
[2] https://www.scanfw.org/visitationfacilitation/
[3] https://www.scanfw.org/homebasedtherapy/

# LEGAL ANALYSIS

A.  **STANDARD OF REVIEW**

Subject matter jurisdiction is an issue that should be resolved early. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012). If subject matter jurisdiction is not evident from the face of the complaint, the Court analyzes the motion to dismiss under Rule 12(b)(1) as any other motion to dismiss: assuming for purposes of the motion that all of the well-pleaded allegations in the complaint are true and drawing all reasonable inferences in favor of the nonmoving party. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Because the instant motion sounds under Rule 12(b)(1), the Court may consider matters outside of the pleadings. *Palay v. United States*, 349 F.3d 418, 424–25 (7th Cir. 2003); *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987); 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1350 (3d ed. 2002). Thus, the Court may properly look beyond the jurisdictional allegations in the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009); *Ezekiel*, 66 F.3d at 897.

In considering the complaint in this case the Court is reminded that pro se complaints, "however inartfully pleaded," are to be liberally construed, and the Court holds pro se filings to a lower standard than it applies to the more formal pleadings usually drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). However, "pro se litigants are masters of their own complaints," and "district judges have no obligation to act as counsel or paralegal to pro se

litigants." *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005). In adjudicating a Rule 12(b)(1) motion, a court may weigh the evidence to determine whether jurisdiction has been established. *United Phosphorus, Ltd.*, 322 F.3d at 946. The burden of proving that jurisdiction exists is on the party invoking the court's jurisdiction, in this case the Plaintiff. *Id*.

B. **FEDERAL QUESTION JURISDICTION**

28 U.S.C. § 1331 provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." This nation's courts have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id*., at 720; *see also Reno v. Flores*, 507 U.S. 292, 301–302 (1993).

The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is unquestionably recognized by our courts. Nearly 100 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), the United States Supreme Court held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535 (1925), the Supreme Court again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." The Court explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id*., at 535. The Supreme Court returned to

the subject in *Prince v. Massachusetts*, 321 U.S. 158 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.*, at 166.

In subsequent cases, the Supreme Court repeatedly recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *See, e.g.*, *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'" (citation omitted)); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); *Parham v. J. R.*, 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course"); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg*, 521 U.S. at 720 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t]. . .to direct the education and upbringing of one's children"). In

5

light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

Of course, the Constitution only protects against "state action." Here, SCAN is an Indiana domestic non-profit corporation.[4] However, the fact that it is a private corporation does not end the analysis. Conduct of private actors may, in some cases, amount to "state action" where the deprivation is "caused by the exercise of some right or privilege created by the state. . .or by a person for whom the state is responsible" and "the party charged with the deprivation. . .may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Private actors may become state actors in several ways, including when the state delegates a public function to a private entity or when the state "effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision." *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004).

The Supreme Court has set forth a number of tests to determine whether a private party acted under color of state law. There's the joint action test, *see Dennis v. Sparks*, 449 U.S. 24 (1980), the public function test, *see West v. Adkins*, 487 U.S. 42 (1988), the state compulsion test, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 114 (1970), and the nexus test, *see Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974). Though these tests provide guidance, "the Supreme Court has emphasized repeatedly that courts must decide the state-action issue on a case-by-case basis considering *all* of the circumstances." *Tarpley v. Keistler*, 188 F.3d 788, 793 (7th Cir. 1999) (emphasis in original).

---

[4] https://bsd.sos.in.gov/PublicBusinessSearch/BusinessInformation?businessId=98055&businessType=Domestic%20Nonprofit%20Corporation&isSeries=False

6

The information available to the Court here demonstrates that SCAN is a (partially) state-funded entity, providing visitation facilitation and home-based therapy only to those individuals who are referred by the Indiana Department of Child Services. Plaintiff's complaint indicates that SCAN is responsible for supervising Plaintiff's visitations with her daughter, as well as administering and/or facilitating court-ordered therapy for Plaintiff and her daughter. Given that SCAN performs these functions only for those who are referred by the Indiana Department of Child Services, it can fairly be assumed that SCAN is performing the alleged actions in this case pursuant to such a referral. With neither the Plaintiff nor SCAN providing any additional information, it appears discovery will be necessary to determine whether SCAN was an agent of the State of Indiana. However, Plaintiff has alleged a connection, albeit a tenuous one, between SCAN and the state, which the Court must accept as true. Accordingly, the Court finds that it has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, and this matter may proceed. Given the determination that the Court has subject matter jurisdiction, it is unnecessary to address the Defendants' argument regarding diversity jurisdiction.

**C.    CASE AND CONTROVERSY**

Subject matter jurisdiction aside, Defendants assert that Plaintiff's suit does not satisfy the case or controversy requirements of Article III of the Constitution. In order to establish standing, a plaintiff must allege "injury, caused by the defendant, and redressable by a favorable judicial decision." *Craftwood, II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). Plaintiff has asserted that her parenting rights have been violated by Defendants and has sought $700,000 in damages. As set forth above, federal courts regularly hear cases alleging due process violations of parental rights without violating Article III of the Constitution. The Court concludes that Plaintiff has standing to bring this suit.

## D. DOMESTIC RELATIONS EXCEPTION

Defendants return to jurisdictional concerns in their final argument, asserting that this matter falls within the "domestic relations" exception to federal jurisdiction[5]. The Supreme Court has long recognized a domestic relations exception to federal subject matter jurisdiction. *See Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1859); *Ankenbrandt v. Richa*rds, 504 U.S. 689, 694–95 (1992) (reaffirming the exception); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12–13 (2004) (recognizing the exception's continued relevance), abrogated on other grounds. In major part, the domestic relations exception divests the federal courts of any power to issue or amend divorce, alimony, or child custody decrees. *Ankenbrandt*, 504 U.S. at 703. The exception stems from the federal court's strong deference to the states in the area of family law. *Newdow*, 542 U.S. at 13. It likewise recognizes that state courts have developed a proficiency with the substantive and procedural issues germane to domestic matters. *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007).

Here, Plaintiff is not asking the Court to issue or amend any child custody decree. Instead, Plaintiff is seeking redress for alleged due process violations committed by the Defendants. There is no "domestic relations" issue before the Court, and the exception does not apply divest this Court of subject matter jurisdiction.

---

[5] Defendant describes the exception as one to "federal diversity jurisdiction," (ECF No. 14, p. 5) but in fact the exception applies to federal subject matter jurisdiction generally.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 13) is DENIED. Defendants are ordered to file their answer or other responsive pleading within ten (10) days of this Order.

SO ORDERED on May 10, 2019.

                                             s/ Holly A. Brady
                                             JUDGE HOLLY A. BRADY
                                             UNITED STATES DISTRICT COURT